**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| In Re: ) | CHAPTER 7 |
| ) | |
| PAMELA J. BOOKER and ORONDE ) | CASE NO. 24-52404-PWB |
| BOOKER, ) | |
| ) | |
| Debtors. ) | |
| ) | |
| ) | |
| PAMELA J. BOOKER and ORONDE ) | |
| BOOKER, ) | |
| ) | ADVERSARY PROCEEDING |
| Plaintiffs, ) | NO. |
| ) | |
| v. ) | _____ |
| ) | |
| DAVID LEROY MILLS JR., ) | |
| ) | |
| Defendant. ) | |

**ADVERSARY COMPLAINT**

Pamela J Booker ("**Mrs. Booker**") and Oronde Booker ("**Mr. Booker**") (collectively, the "**Debtors**," or the "**Plaintiffs**"), by and through their undersigned counsel, files this Adversary Complaint against David Leroy Mill, Jr. (the "**Defendant Mills**") respectfully stating as follows:

**JURISDICTION AND VENUE**

1. The United States Bankruptcy Court for the Northern District of Georgia (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2).

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. This is an adversary proceeding brought by the Plaintiff pursuant to §§105(a) and 362 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 7001 *et seq*. of the

Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") for willful violation of the automatic stay.

4.  The Plaintiffs consent to entry of a final order or judgment by this Court with respect to this Complaint if it is determined that this Court, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

## THE PARTIES

5.  Defendant David Leroy Mills Jr. is an individual and resident of the State of Texas and has transacted business in Georgia and has willfully availed himself of the use of the courts of the state of Georgia, and he is subject to the jurisdiction of this Court. Defendant Mills can be properly served at his residence, located at 18207 Polo Meadow Dr., Humble, TX 77346.

6.  Plaintiffs Pamela J Booker and Oronde Booker are both individuals and residents of the State of Georgia. Mr. and Mrs. Booker are spouses, and both reside at 4203 Cheryl Anne Court, Stone Mountain, GA 30083.

## FACTUAL BACKGROUND

7.  This action arises from a partnership dispute between the Debtors and Defendant Mills. The litigation related to that dispute has inappropriately continued despite the Debtors' bankruptcy case filing, the presence of the automatic stay, and the Defendant's knowledge of the automatic stay.

### Koils by Nature, LLC

8.  On February 6, 2015, Mrs. Booker formed a Georgia limited liability company named Koils by Nature, LLC ("**Koils**").

9.  Koils creates and sells beauty products including conditioners, cleansers, butters, oil treatments, styling gels, and other accessories through online vendors.

10. In 2017, Defendant Mills made a $10,000.00 investment contribution to Koils and provided Koils with a loan of approximately $10,000.00 in exchange for a 10% membership interest in Koils.

11. On April 21, 2019, the members of Koils entered into a modified operating agreement (the "**Agreement**"). According to the Agreement, the members of Koils consist of Mrs. Booker, Mr. Booker, and Defendant Mills. Under the Agreement, Mrs. Booker holds 80% of the membership interest in Koils, while Mr. Booker and Defendant Mills each hold a 10% membership interest in Koils.

12. In early 2020, after Koils failed to return the initially anticipated profits (of which there were none), a dispute arose between Defendant Mills and the Debtors.

**The Lawsuit**

13. On February 5, 2021, Defendant Mills initiated a lawsuit by filing a complaint (the "**Complaint**") against Koils and the Debtors in the Superior Court of Dekalb County (the "**State Court**") styled as *Davis Mills v. Pamela J. Booker, Oronde Booker, and Koils by Nature,* LLC, Civil Action No. 21CV1732) (the "**State Court Case**").

14. The claims that Defendant Mills brought forth in the Complaint include a demand for accounting records, breach of fiduciary duty, breach of contract, and fraud.

15. The Debtors could not afford to hire an attorney to defend against the State Court Case.

16. Approximately nine months after the Complaint was filed, Defendant Mills filed a motion for default judgment.

17. The Debtors then engaged counsel, who unsuccessfully attempted to open the default. The State Court entered an order granting Defendant Mills' motion for default judgment

as to liability only on July 7, 2022 and providing for a six-month discovery period on the question of damages.

18.  Shortly before that, in June of 2022, Defendant Mills filed a motion to appoint a receiver, which the State Court ultimately granted in January of 2023.

### The Appointment of a Special Master to Determine Damages

19.  The following month, on February 28, 2023, the State Court entered an order appointing a special master (the "**Order Appointing Special Master**"), which did not appear to be procedurally proper.[1] In this Order, the State Court appointed the same individual who it had previously appointed to be a receiver over Koils as special master (the "**Special Master**").

20.  It is unclear what the purpose of appointing a Special Master was in the State Court Case, which is something that ordinarily only happens in more complex disputes where there is significant money at stake and the parties can afford to pay the associated fees.

21.  According to the Order Appointing Special Master, the payment of the Special Master's compensation "shall generally be allocated and payable by [the Debtors and Koils]."[2] The Special Master required a retainer of $5,000.00, which the Debtors could not afford.

22.  It is unclear where the money was supposed to come from to pay these expenses. Shortly after the appointment of the Special Master, counsel for the Debtors contacted the Special Master to explain that it would be difficult for the Debtors to immediately pay a $5,000.00 retainer to the Special Master.

---

[1] Under Ga. R. Super. Ct. Rule 46(B)(3), the court "may enter the order appointing a master only after the master has filed an affidavit: (i) disclosing whether there is any ground for disqualification…" The affidavit of the special master was filed two weeks after the order appointing a special master was entered. Further, under Ga. R. Super. Ct. Rule 46(B)(1), the court "[m]ust give the parties notice and an opportunity to heard before appointing a master." But the State Court entered the Order Appointing Special Master just a few days after providing the parties with notice.

[2] The approved rates for the Special Master's services were $450 per hour for the Special Master's time, $350 per hour for associate counsel's time, and $100 per hour for administrative staff's time; $330 per hour for the CPA's time, and $100-$200 per hour for the CPA's staff's time.

23. In response, the Special Master suggested that the Debtors liquidate their personal property to pay the retainer.

24. From the time the State Court Case was initiated through now, Koils has failed to produce any profits. Over the course of the State Court Case, neither Koils nor the Debtors were financially capable of hiring an accountant or financial professionals to produce the specialized reports and information ordered by the Special Master while also paying the Special Master's compensation and fees and the fees of their counsel for representation in the State Court Case.

25. On April 28, 2023, the Special Master entered an Order of Special Master requiring Koils to provide monthly written reports to the Special Master which required Koils to report its profits, losses, sales, orders, loans, expenses, and other financial information (the "**Special Master's Order**").

26. Although the Debtors were unable to fully comply with the Special Master's Order, the Debtor's provided all the documents available to them and a vast majority of the documents and information required by the Special Master.

27. On February 15, 2024, the State Court served Defendant Mills, the Debtors, and Koils with a notice of show cause hearing set for February 22, 2024 to hear the issue of the Debtors' and Koils' compliance with the Special Master's Order.

### The Bankruptcy Cases

28. On February 21, 2024, Koils filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code in the Northern District of Georgia Atlanta Division, thereby commencing Bankruptcy Case No. 24-51861-PWB.

29. Upon the filing of Koils' bankruptcy petition, the automatic stay of Title 11 of the United States Code (the "**Bankruptcy Code**") section 362(a)(1) immediately went into effect,

prohibiting the continuation of a judicial hearing or other action against Koils to recover a claim against the Koils that arose before Koils' bankruptcy petition.

30. Contemporaneously with Koils' bankruptcy case filing, counsel for Koils filed a suggestion of bankruptcy in the State Court Case and provided notice of the case filing to Defendant Mills' counsel and to State Court chambers via email.

31. Defendant Mills did not file a motion requesting relief from the stay and still has not done so to date.

32. In response to the email notification of Koils' bankruptcy filing, Defendant Mills, by and through Defendant Mills' counsel, urged the State Court to continue with the hearing and argued to chambers and counsel for Koils that "the company cannot file for bankruptcy" due to the voting rights of the members.

33. At the show cause hearing on February 22, 2024, Defendant Mills, by and through Defendant Mills' counsel, failed to take measures to cease the continuation of the State Court Case, presented to the State Court that Defendant Mills intended to continue with the State Court Case, and requested relief in the form of an award for monetary damages.

34. The show cause hearing was continued to March 18, 2024 so that the State Court could contemplate how Koils' bankruptcy case filing impacted the continuation of the litigation.

35. On March 5, 2024 (the "**Petition Date**"), the Debtors filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code, thereby commencing the above-captioned bankruptcy case in this Court (the "**Bankruptcy Case**").

36. Upon the filing of the Debtors' bankruptcy petition, the automatic stay of section 362(a)(1) of the Bankruptcy Code immediately went into effect, prohibiting the continuation of

judicial hearing or other action against the Debtors to recover a claim against the Debtors that arose before Debtors' bankruptcy petition.

37. On March 11, 2024, the Debtors' counsel filed a suggestion of bankruptcy case filing in the State Court Case notifying the relevant parties that the case had been filed.

38. Rather than file a motion for relief from stay with this Court, counsel for Defendant decided to simply go forward with arguments at the continued hearing without bothering to seek permission from this Court to do so.

39. At the March 18, 2024 hearing, Defendant Mills, by and through Defendant Mills' counsel, presented to the State Court that Defendant Mills intended to continue with the State Court Case and argued in favor of continuing the judicial proceeding.

40. Defendant Mills' counsel requested that the State Court grant Defendant Mills relief in the form of an award for monetary damages related to certain legal fees incurred by Defendant Mills stating that his client wished "to be made whole," arguing that the Debtors should be held in contempt that that they should be required to pay money to Defendant Mills.

41. At no point did Defendant Mills caution the State Court against moving forward with the proceeding given the existence of the automatic stay.

42. Having filed the Bankruptcy Case and relying on the protection of the automatic stay, the Debtors believed in good faith that the State Court Case would be stayed pending the outcome of their Bankruptcy Case or until otherwise ordered by this Court.

## The Contempt Order

43. Following the hearing on March 18, 2024, the State Court entered an Order (the "**Contempt Order**") finding that Koils and the Debtors willfully failed to timely produce certain

financial records in accordance with the Special Master's Order and were thereby found to be in willful contempt of the State Court. The Contempt Order is attached hereto as **Exhibit A**.

44. In the Contempt Order, the State Court acknowledged the existence of the automatic stay, and that the "underlying proceedings of [the State Court Case] were stayed," but that, "[p]roceedings for criminal contempt, however, are exempted from the automatic stay" (citing Bankruptcy Code section 362(b)(1) and *In re Bible*, 110 B.R. 1002, 1005 (Bankr. S.D. Ga. 1990).

45. According to the State Court, the distinction between criminal contempt and civil contempt is that "criminal contempt imposes unconditional punishment for prior acts of contumacy, whereas civil contempt imposes conditional punishment as a means of coercing future compliance with a prior court order." *Citing Shooter Alley, Inc. v. City of Doraville*, 341 Ga. App. 626, 627 (2017). [*See* Exh. A, p. 2].

46. In the Contempt Order, the State Court specified that the acts of willful failure to timely produce financial records in accordance with the Special Master's Order "are all that shall be considered by the Court for purposes of [the Contempt Order]." [*See* Exh. A, p.3].

47. A footnote in the Contempt Order states that "[a]part from an initial retainer, which was late, Defendants also failed to pay the Special Master's fees and are currently in arrears in the amount of $6,807.86." [*See* Exh. A, p. 3, fn. 2].

48. Instead of requiring the Debtors and/or Koils to pay a fine to the court, the State Court required payments to be made to Defendant Mills and the Special Master.

49. In the Contempt Order, the State Court ordered that Koils, Mrs. Booker, and Mr. Booker collectively pay a total of $5,000.00 to Defendant Mills and an additional $5,000.00 to the Special Master by April 19, 2024.

50. The Contempt Order does not specify whether the $10,000.00 must be paid from the Debtors' post-petition income or from proceeds realized from the liquidation of the property of the Debtors' bankruptcy estate.

51. The Debtors' schedules indicate that the Debtors' monthly income alone would not be enough to pay the $10,000.00, so it is unclear where that money would come from, unless the Debtors were required to liquidate exempt property or property of the estate to pay certain pre-petition creditors.

52. The Contempt Order includes a footnote that states: "[s]hould [the Debtors] seek and obtain an order from the Bankruptcy Court staying or invalidating this order for any reason, [the Debtors] shall provide this Court with a copy of said order immediately upon receipt thereof."

## COUNT I: WILLFUL VIOLATION OF THE AUTOMATIC STAY UNDER 11 U.S.C. § 362(k)

53. The Debtors hereby re-allege and incorporate all preceding paragraphs as if fully set forth herein.

54. Defendant Mills, by and through Defendant Mills' counsel, was provided with notice of filing of the Debtors' Bankruptcy Case immediately after the case was filed.

55. With full knowledge of the Bankruptcy Case, Defendant Mills, by and through Defendant Mills' counsel, appeared at hearings in the State Court Case, argued in favor of continuing the State Court Case, communicated with the State Court about the intent to move forward with the proceedings and requested that he be awarded damages.

56. Defendant Mills did not file a motion for relief from the automatic stay before taking the foregoing actions.

57. As a result of the continuation of the State Court Case, the Debtors incurred actual damages including attorney's fees for representation in post-petition State Court Case hearings

and matters, attorney's fees involving the preparation and filing of this complaint, and expenses associated with traveling to and appearing at post-petition State Court Case hearings.

58. The Debtor has been harmed by Defendant's violation of the automatic stay. Pursuant to 11 U.S.C. §362(k), the Debtor is entitled to damages, including attorney's fees arising out of the Defendant's violation of the automatic stay. Given the intentional and willful nature of the stay violations, punitive damages are also appropriate under Bankruptcy Code section 362(k)(1), in an amount to be proven at trial.

## COUNT II: DECLARATORY JUDGMENT
## INVALIDATING THE CONTEMPT ORDER

59. The Debtors hereby re-allege and incorporate all preceding paragraphs as if fully set forth herein.

60. Declaratory relief from this Court is appropriate pursuant to Bankruptcy Rule 7001 and the Declaratory Judgment Act, 28 U.S.C. § 2201. *See King v. Skolness* (*In re King*), 624 B.R. 259 (Bankr. N.D. Ga. 2020).

61. The Contempt Order requires the Debtors to pay $10,000.00 total to Defendant Mills and the Special Master.

62. The State Court found the Debtors to be in willful criminal contempt by failing to provide documentation in a timely manner as ordered by the Special Master.

63. The State Court entered the Contempt Order after the Debtors filed the Bankruptcy Case and after the automatic stay became effective.

64. While the State Court determined that the continuation of the contempt portion of the State Court Case was criminal in nature and, thus, excepted from the automatic stay, this Court is not bound by labels affixed to the order, instead the court must review the facts and

-10-

circumstances that led to the issuance of the contempt order. *In re Burgess*, 503 B.R. 154, 157 (Bankr. M.D. Fla. 2014).

65. The State Court Case should have been stayed in its entirety once it was determined that Koils and the Debtors each filed bankruptcy cases which invoked the automatic stay.

66. Instead, the State Court proceeded with the show cause hearings and issued a Contempt Order requiring the Debtor's pay amounts that they cannot afford to (a) the opposing party claiming damages in the State Court Case and (b) a Special Master who claimed that there were outstanding fees owed to him.

67. While the Contempt Order defines the Debtor's behavior as "criminal" in order to invoke the exception to the automatic stay of section 362(b)(1), the facts and circumstances of the State Case indicate that the post-petition proceedings were clearly not beyond the reach of the automatic stay.

68. The Debtors ask the Court to enter a declaratory judgment finding the Contempt Order invalid and void on all accounts.

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Debtors respectfully requests that the Court grant the following relief against the Defendant Mills as to Counts I through III of this Complaint, and that the Court enter judgment against the Debtors as follows:

A. Awarding actual damages to the Debtors and imposing punitive damages on Defendant Mills for Defendant Mills' willful violation of the automatic stay and contempt of this Court;

B. Declaring that the Contempt Order entered in the State Court Case is invalid and void on all accounts; and

  C.  Granting the Debtors such other relief and further relief as this Court deems just and proper.

Dated: April 15, 2024       Respectfully submitted,

                 **KECK LEGAL, LLC**

                 <u>*/s/ Benjamin R. Keck,*</u>
                 Benjamin R. Keck, Ga. Bar No. 943504
                 Craig A. Cooper, Ga. Bar No. 941033
                 2566 Shallowford Road, Suite 104-252
                 Atlanta, GA 30345
                 Tel. (470) 826-6020
                 bkeck@kecklegal.com
                 ccooper@kecklegal.com
                 ***Counsel for the Debtor***

## Exhibit A

**The Contempt Order**

FILED 3/20/2024 10:30 AM CLERK OF SUPERIOR COURT DEKALB COUNTY GEORGIA

# IN THE SUPERIOR COURT OF DEKALB COUNTY
# STATE OF GEORGIA

| | |
|---|---|
| DAVID MILLS, | ) |
|     Plaintiff, | ) CIVIL ACTION |
| | ) |
| vs. | ) FILE NO. 21CV1732 |
| | ) |
| PAMELA BOOKER; ORONDE | ) |
| BOOKER; and KOILS BY NATURE, | ) |
| LLC; | ) |
|     Defendants. | ) |

## ORDER

This matter came before the Court upon referral by the Special Master for a hearing to determine whether Defendants should be held in contempt for their repeated failures to comply with the Special Master's April 27, 2023 Order (the "Order") requiring production of certain documents and information regarding their finances. After careful consideration, and as further detailed herein, the Court finds Defendants to be in **WILLFUL CONTEMPT** and hereby sanctions them accordingly.

## ANALYSIS AND FACTUAL FINDINGS

I.    <u>Defendants' Bankruptcy Proceedings.</u>

The Court acknowledges that each of the Defendants have filed bankruptcy as of the date of this order and, accordingly, the underlying proceedings of this case are automatically stayed pursuant to 11 U.S.C. § 362.[1] Proceedings for *criminal* contempt, however, as contemplated here, are exempted from the automatic bankruptcy stay. 11 U.S.C. § 362(b)(1); <u>see also</u> <u>In re Bible</u>, 110 B.R. 1002, 1005 (Bankr. S.D. Ga. 1990) (discussing the application of the automatic bankruptcy stay on civil versus criminal

---

[1] Defendant Koils by Nature, LLC filed bankruptcy in the Northern District of Georgia on or about February 21, 2024. Defendants Pamela and Oronde Booker filed bankruptcy on or about March 5, 2024.

contempt proceedings); Ward v. Ward, 261 Ga. 659, 659 (1991) ("[T]he unavailability of civil contempt to collect the debt would not preclude a finding of criminal contempt for willful refusal to obey a court order."); Dep't of Hum. Res. v. Chambers, 211 Ga. App. 763, 766 (1994), disapproved of on other grounds by Jones v. Peach Trader Inc., 302 Ga. 504 (2017) ("[E]ven the bankruptcy stay provisions do not prohibit pursuing criminal sanctions against a debtor such as ... criminal contempt for failure to obey a court order."). As such, the Court can, and will, only consider Defendants' past actions in determining whether there has been willful contempt and, if so, the appropriate unconditional sanction to be applied.

II.     Defendants' Contempt.

"Acts of contempt are neither civil nor criminal." Grantham v. Universal Tax Sys., Inc., 217 Ga. App. 676, 677 (1995). "Once an act is considered to constitute contempt of court, the action the court takes to remedy it determines whether the contempt is deemed criminal or civil." Id. "The distinction between the two is that criminal contempt imposes unconditional punishment for prior acts of contumacy, whereas civil contempt imposes conditional punishment as a means of coercing future compliance with a prior court order." Shooter Alley, Inc. v. City of Doraville, 341 Ga. App. 626, 627 (2017). Like any criminal proceeding, criminal contempt must be proven beyond a reasonable doubt. See Salter v. Greene, 226 Ga. App. 384, 385 (1997). Upon a careful review of the evidence, and after providing Defendants with an opportunity to be heard during two hearings held on February 22, 2024 and March 18, 2024, respectively, the Court so finds beyond a reasonable doubt that Defendants have acted in willful contempt.

On February 28, 2023, the Court appointed a Special Master for this case pursuant to Uniform Superior Court Rule 46. Pursuant thereto, the Special Master issued his Order

on April 27, 2023 requiring the parties to produce for inspection a number of financial documents and other information necessary for him to perform his duties. Despite repeated admonishments by the Special Master and this Court, however, Defendants have failed to do so. While they produced some documents—usually at odd and unannounced intervals—most were never produced at all and/or were produced in incomplete form and almost always without explanation. Specifically, for purposes of this contempt proceeding, the Court finds that Defendants willfully failed to timely produce the following in accordance with the Special Master's Order:

- Monthly reports containing information or documents detailing any and all payments or distributions made to Pamela or Oronde Booker from May 2023 through February 2024;
- Monthly reports containing information or documents detailing any and all payments made on behalf of Pamela or Oronde Booker to any third parties from May 2023 through February 2024;
- Complete statements from all financial institutions for Pamela Booker for years 2021, 2022, and 2023;
- Verified financial statements for all Defendants, detailing assets and liabilities as of April 30, 2023 and copies of all related documents including any appraisals, deeds, mortgages, and/or loan documents; and
- Statements and correspondence with credit card companies for all Defendants from 2019 to April , 2023.[2]

While the above is not exhaustive of Defendants' contemptuous acts, such are all that shall be considered by the Court for purposes of this order. The Court further finds that each item listed—including each incomplete, untimely, and/or otherwise deficient monthly report—constitutes a separate action for a total of twenty-five (25) independent acts of willful contempt. As unconditional sanction for such contemptuous conduct, the Court hereby **FINES** Defendants $400 for each such act, for a total amount of $10,000,

---

[2] Apart from an initial retainer, which was late, Defendants also failed to pay the Special Master's fees and are currently in arrears in the amount of $6,807.86.

to be evenly split in payment to Plaintiff David Mills ($5,000) and the Special Master ($5,000). See O.C.G.A. § 15-6-8(5); Reece v. Smith, 292 Ga. App. 875, 876 (2008) ("[P]enalties are applicable to each separate act of contempt found by the trial court."). Said payment is to be made no later than Friday, April 19, 2024.

## CONCLUSION

The Court finds Defendants to be in **WILLFUL CONTEMPT**. Defendants are hereby **FINED** the total amount of $10,000 for the twenty-five (25) specific acts of contempt outlined herein. Defendants shall pay half of this fine ($5,000) to the Defendant, David Mills, and the other half ($5,000) to the Special Master no later than **Friday, April 19, 2024**.[3]

**SO ORDERED** this 18th day of March, 2024.

_____
BRIAN E. LAKE, JUDGE
STONE MOUNTAIN JUDICIAL CIRCUIT

---

[3] Should Defendants seek and obtain an order from the Bankruptcy Court staying or invalidating this order for any reason, Defendants shall provide this Court with a copy of said order immediately upon receipt thereof.